1
2   LAW OFFICES OF
    JOSEPH R. BROWN
3   California State Bar No. 143594
    13808 VENTURA BLVD.
    SHERMAN OAKS, CALIFORNIA 91423
4   Phone: (818) 907-0880
    Facsimile: (818-907-0880)
5   Email: joebrownlaw@gmail.com

6   Attorney for Defendants and
    Counterclaimants, DogZenergy, Inc.,
7   Handlr, Inc., and Brittany Alwerud.

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11  PET CHECK TECHNOLOGY, LLC, )    **Case No.  2:18-cv-00962-R-E**

12              Plaintiff,          )    ANSWER TO COMPLAINT; AND
    vs.                             )    COUNTERCLAIM AGAINST PET
13                                  )    CHECK TECHNOLOGY, LLC FOR
    HANDLR, INC., DOGZENERGY,       )    DECLARATORY RELIEF FOR
14  INC., and BRITTANY ALWERUD,     )    NON-INFRINGEMENT AND
                                    )    INVALIDITY OF U.S. PATENT NO.
15              Defendants.         )    9,165,334.
                                    )
16  ─────────────────────────────  )
                                    )
17  HANDLR, INC., DOGZENERGY,       )
    INC., and BRITTANY ALWERUD,     )
18                                  )
                Counterclaimants,   )
19  vs.                             )
                                    )
20  PET CHECK TECHNOLOGY, LLC.,     )
                                    )
21              Counterdefendant.   )
                                    )
22  ─────────────────────────────  )

23                  <u>**ANSWER**</u>

24      For its Answer, Defendants and Counterclaimants, HANDLR, INC.

25  (***"Handlr"***), DOGZENERGY, INC. (***"DogZenergy"***), and BRITTANY ALWERUD

26  (***"Ms. Alwerud"***), who are collectively referred to herein as ***"Defendants"***, answer

27  corresponding to paragraphs of the "Corrected Complaint" (hereafter ***"Complaint"***)

28  as follows:

---

## NATURE OF ACTION

**1.**    This action is for [i] breach of contract, [ii] misappropriation of trade secrets, and [iii] infringement of United States Patent No. 9,165,334 ("the '334 Patent," attached hereto as Exhibit A) under the patent laws of the United States, 35 U.S.C. § 1 et seq.

**ANSWER:** Defendants admit that Plaintiff has filed a complaint against these answering defendants alleging [i] breach of contract, [ii] misappropriation of trade secrets, and [iii] infringement of a United States Patent under the patent laws of the United States, 35 U.S.C. § 1 et seq.  Defendants deny any liability to Plaintiff whatsoever based upon said claims.

## PARTIES

**2.**    Plaintiff, Pet Check is an Illinois limited liability company with its principal place of business at 1341 W. Fullerton Ave., Pmb 365, Chicago, IL 60614.

**ANSWER:**  Defendants have insufficient knowledge to admit or deny the allegations of Paragraph 2 and therefore, deny them.

**3.**    Upon information and belief, Defendant Brittany Alwerud is an individual residing at 1515 7th Street, Santa Monica, CA 90401.

**ANSWER:**  Defendants admit that Brittany Alwerud is a living, breathing individual, but deny that she resides at 1515 7th Street, Santa Monica, CA 90401.

**4.**    Upon information and belief, Defendant Handlr, Inc. is a Delaware corporation with its principal place of business at 1515 7th Street, Santa Monica, CA 90401. Upon information and belief, Ms. Alwerud is the sole owner and operator of Handlr, Inc.

**ANSWER:**  Defendants admit that Handlr, Inc. is a Delaware corporation. Defendants deny that Handlr's current principal place of business is 1515 7th Street, Santa Monica, CA 90401.  Defendants deny that Brittany Alwerud is the sole shareholder (*i.e. owner and operator*) of Handlr, Inc.

///

1   **5.**      Upon information and belief, Defendant DogZenergy, Inc. is a California

2   corporation with its principal place of business at 7514 Girard Ave., #614, Suite 1,

3   La Jolla, CA, 92037.  Upon information and belief, Ms. Alwerud is the sole owner

4   of DogZenergy, Inc.

5   **ANSWER:**  Defendants admit that DogZenergy is a California corporation.

6   Defendants deny that DogZenergy's current principal place of business is 7514 Girard

7   Ave., #614, Suite 1, La Jolla, CA, 92037.  Defendants admit that Brittany Alwerud

8   is the sole shareholder of DogZenergy, Inc.

9   **JURISDICTION AND VENUE**

10   **6.**      This action is for patent infringement arising under the patent laws of the

11   United States, 35 U.S.C. § 1 et seq.

12   **ANSWER:**  Defendants admit that Plaintiff has asserted patent infringement

13   claims against Defendants and that Plaintiff has brought an action under 35 U.S.C.

14   §1 *et seq*.  Defendants deny any violations of 35 U.S.C. §1 *et seq* and further deny

15   any wrongful conduct against Plaintiff whatsoever.

16   **7.**      This Court has subject matter jurisdiction for the claims pursuant to 28

17   U.S.C. §§ 1331, 1332, and/or 1338(a).

18   **ANSWER:**  Defendants admit that this Court has subject matter jurisdiction

19   to determine the claims and counterclaims pursuant to 28 U.S.C. §§ 1331, 1332,

20   and/or 1338(a).

21   **8.**      This Court has personal jurisdiction over Defendants because, upon

22   information and belief, Defendants engage in regular and substantial business in and

23   has systematic and continuous dealings within this District related to the subject

24   matter of the patent infringement claims alleged in this Complaint. This includes

25   using and offering for sale infringing products and services to customers in this

26   District.

27   **ANSWER:**  Defendants submit to the jurisdiction of this Court, but deny each

28   and every allegation of wrongful conduct contained in Paragraph 8 of the Complaint.

**9.**     Venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400(b).

**ANSWER:**  These answering Defendants waive any challenge to the United States District Court for the Central District of California as a proper venue for prosecuting and defending this action.

## FACTUAL BACKGROUND

**10.**     Plaintiff Pet Check has been operating since 2010, and is well known for offering a web and mobile application system for scheduling, staffing, tracking and monitoring services that can be utilized for pet services, such as dog walking (referred to hereinafter as "Pet Check's System").

**ANSWER:** On information and belief, Defendants admit that Plaintiff has been operating some form of business since 2010.  Defendants have insufficient knowledge to admit or deny the remaining allegations of Paragraph 10 and, therefore, deny them.

### Breach of Pet Check's License Agreement

**11.**     Defendant, Brittany Alwerud contacted Pet Check in 2012 to gain access to Pet Check's system as a Pet Check customer. At the time, Ms. Alwerud owned and operated a dog walking business named DogZenergy, Inc.

**ANSWER:**  Defendants deny that Brittany Alwerud, in her individual capacity contacted Pet Check in 2012 or at any other time.  Defendants admit that Ms. Alwerud is, and in 2012 was, a principal of defendant DogZenergy, Inc.

**12.**     On September 21, 2012, Ms. Alwerud signed Pet Check Technology License and Subscription Agreement (***"Agreement"***).  A true and correct copy of the Agreement is attached hereto as Exhibit B and incorporated by reference, as if the same were set forth in full herein. Ms. Alwerud returned a scanned copy of the first page of the contract, the signature page of the contract and Schedule B of the contract in an email dated September 21, 2012.  A true and correct copy of Ms. Alwerud's email and signed pages are attached hereto as Exhibit C.

///

1    **ANSWER:**  Defendants deny that Ms. Alwerud, in her individual capacity,
2    signed the Agreement.  Defendants deny that a copy of the signed agreement is
3    attached to the Complaint as Exhibit B.  Defendants admit that the document attached
4    to the Complaint as Exhibit C was signed and sent to Plaintiff by Ms. Alwerud in her
5    capacity as a principal of Defendant DogZenergy, but deny that Ms. Alwerud was at
6    any time acting in an individual capacity.

7        **13.**    As owner of DogZenergy, Inc., Ms. Alwerud personally directed the
8    conduct of DogZenergy, Inc. and was an agent, representative and/or alter ego of
9    co-defendant DogZenergy, Inc.

10    **ANSWER:**    Defendants admit that Ms. Alwerud, in her capacity as an
11   employee of DogZenergy, Inc., directed the conduct of DogZenergy, but deny that
12   Ms. Alwerud at any time acted in any capacity other than as a corporate
13   officer/employee of DogZenergy, Inc. or that she was acting in any manner other than
14   within the course and scope of her employment.  Defendants deny that Ms. Alwerud
15   is or was an alter ego of DogZenergy, Inc.

16       **14.**    As a licensee, Ms. Alwerud had access to Pet Check's proprietary
17   information including software, documentation, screen formats, reports, ideas,
18   methods, algorithms, formulas and concepts utilized in developing Pet Check's
19   System.

20    **ANSWER:**    Defendants deny that Ms. Alwerud was ever a licensee of Pet
21   Check.  Defendants further deny that any of Pet Check's software, documentation,
22   screen formats, reports, ideas, methods, algorithms, formulas or any of the concepts
23   utilized in developing Pet Check's System are proprietary or legally protected.
24   Defendants further deny that Ms. Alwerud ever had access to any of Pet Check's
25   software, documentation, screen formats, reports, ideas, methods, algorithms,
26   formulas or any of the concepts utilized in developing Pet Check's System other than
27   as an end-user of the product and only in the same manner as that information is
28   available to any other end-user of the general public.

1  **15.**   Pursuant to the Agreement, Pet Check provisionally licensed various
2  *"Licensed Products and Methods"* (*including various intellectual property rights*
3  *such as Pet Check's trade secrets related to Pet Check's dog walking services*) to
4  Defendants in exchange for an initial payment and future payments to be made
5  according to a royalty schedule. (See Exhibit B, at Schedule B.)

6  **ANSWER:**  Defendants deny that Pet Check has any *"trade secrets"* related
7  to dog walking services. Defendants admit that between 2012 and 2015, DogZenergy
8  paid Pet Check approximately $99.99 per month, plus credit card charges, as a
9  *"License Fee"* and not as a *"royalty"* for the use of its tracking and calendaring
10 system.   Defendants deny that any other named defendant entered into any
11 agreements with Pet Check or utilized any of Pet Check's purported *"products and*
12 *methods"*.

13 **16.**   Upon information and belief, by July 2, 2014, Ms. Alwerud had
14 incorporated Handlr, Inc. and had begun offering for sale Defendants' web and
15 mobile application system for providing a personal concierge application to small
16 business owners and their customers (*"Defendants' System"*).

17 **ANSWER:**   Defendants admit that Handlr, Inc. was incorporated in the State
18 of Delaware on or about July 2, 2014.  Defendants admit that Handlr developed and
19 utilizes its own proprietary internet based software which provides a business
20 management platform to small business owners (***"Handlr Tech"***).  Defendants admit
21 that the Handlr Tech can be accessed via computer and mobile "smart-phone"
22 devices.  To the extent that this Paragraph 16 alleges that the Handlr Tech became
23 fully operational in July of 2014, Defendants deny this allegation.  To the extent that
24 this averment is alleging a unity of interests between each named defendant by
25 referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this
26 allegation.

27 **17.**   On December 15, 2015, Ms. Alwerud terminated her account with Pet
28 Check.

---

**ANSWER:**   Defendants deny that Ms. Alwerud had an *"account"* with Pet Check to terminate.   Defendants admit that on or about December 15, 2015, DogZenergy, Inc. terminated its account/license agreement with Pet Check.

**18.**   To present day, Ms. Alwerud is still the owner and operator of Handlr, Inc. and still offers Defendants' System for sale.

**ANSWER:**   Defendants admit that Ms. Alwerud is currently one of the owners of Handr, Inc.   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.   Defendants further deny that Handlr offers a *"system"* for sale.

**19.**   Defendants' System competes directly with Pet Check's System and upon further investigation, Pet Check determined that Defendants' System incorporates Pet Check's proprietary products and methods that had been licensed to Ms. Alwerud on a limited basis.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to Handlr's services as *"Defendants' System"*, Defendants deny this allegation.   Defendants admit that the Handlr Tech platform can be used by third parties to compete in the same marketplace as Pet Check.   Defendants deny that any portion of the Handlr Tect utilizes any methodology which is protected by Pet Check's purported patent, nor does the Handlr Tech utilize any of Pet Check's purported proprietary products and methods. Defendants further deny that Ms. Alwerud, in her individual capacity, ever entered into a license agreement with Pet Check or otherwise individually licensed Pet Check's product(s), systems or methods.

**20.**   Specifically, when she signed the Agreement, pursuant to Article 14(D) of the Agreement, Ms. Alwerud acknowledged and agreed that the Licensed Products and Methods that Pet Check provisionally licensed to Ms. Alwerud included trade secrets. Specifically, Article 14(D) states:

**Licensee acknowledges that Company's Licensed Products and Methods which** include but are not limited to, the Software, object code, source code, documentation, visual expressions, web site, screen formats, report formats and other design features of the Software, ideas, methods, algorithms, formulae and concepts, all derivative works and copies based upon or utilizing any of the foregoing, and all copies of the foregoing **are trade secrets and the exclusive property of Company having great commercial value to Company (collectively "Proprietary Items")**. The existence and the provisions of this Agreement also constitutes Licensed Products and Methods of Company for purposes of this Agreement and Licensee acknowledges that the restrictions in this Agreement are reasonable and necessary to protect Company's legitimate business interests. (emphasis added).

**ANSWER:**   Defendants deny that Ms. Alwerud ever entered into the Agreement or otherwise agreed to its terms in her individual capacity. To the extent that Paragraph 20 purports to recite the provisions of Article 14(D) of the document attached as Exhibit B to the Complaint, the document speaks for itself.

**21.**   Ms. Alwerud also agreed that, pursuant to at least Article 15(A)(ii) of the Agreement, "[t]he Licensed Products and Methods provided to Licensee under this Agreement [were] provided on a strictly confidential and limited use basis. This Agreement is not an agreement of sale, and no title patent, copyright, trademark, trade secret, Intellectual Property or other ownership rights to any Licensed Products and Methods [were] transferred to the Licensee by virtue of this Agreement."

**ANSWER:**   Defendants deny that Ms. Alwerud ever signed the Agreement or otherwise agreed to its terms in her individual capacity. To the extent that Paragraph 21 purports to recite the provisions of Article 15(A)(ii) of the document attached as

Exhibit B to the Complaint, Defendants' response is that the document speaks for itself.

    **22.**    Under Article 14(F), Ms. Alwerud further agreed that "[d]uring the term, and at anytime thereafter, Licensee shall not do, nor shall it directly or indirectly permit any other person, entity or Licensee Personnel, to do, any of the following," including:

> (v) develop, create, sell, or market the Licensed Products or Methods, or any portion thereof to third parties, irrespective of use or application for any type of business or industry except as permitted under this Agreement;

> (vi) create, recreate, re-engineer, reverse engineer, decompile, copy or disassemble all or any part of the Licensed Products or Methods;

> (vii) modify, adapt, translate or create derivative works based upon the Licensed Products and Methods, or combine or merge any part of them with or into any other Intellectual Property;

> (ix) refer to or otherwise use the Licensed Products or Methods as part of any effort to develop a program having any functional attributes, visual expressions or other features that may in any way be derived from, copy or compete with Company.

    **ANSWER:**  Defendants deny that Ms. Alwerud ever signed the Agreement or otherwise agreed to its terms in her individual capacity. To the extent that Paragraph 22 purports to recite the provisions of Article 15(F) of the document attached as Exhibit B to the Complaint, Defendants' response is that the document speaks for itself.

    **23.**    Under Article 14(G), Ms. Alwerud agreed that:

> During the Term, and for a period of one (1) year thereafter,

> Licensee shall not directly or indirectly, by itself or through third
> parties, develop, create, sell, finance or assist in the development,
> creation or sale of any digital, mobile or internet based product or
> service which is intended to compete with the Licensed Products
> and Methods.

**ANSWER:**  Defendants deny that Ms. Alwerud ever signed the Agreement or otherwise agreed to its terms in her individual capacity.  To the extent that Paragraph 23 purports to recite the provisions of Article 145(G) of the document attached as Exhibit B to the Complaint, Defendants' response is that the document speaks for itself.

**24.**  Upon information and belief, after Ms. Alwerud was granted limited access to Pet Check's System, Ms. Alwerud used Pet Check's Licensed Products and Methods to create the competing Defendants' System and offered the Defendants' System for sale through DogZenergy, Inc. and now through Handlr, Inc.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 24 of the Complaint.

**25.**  Accordingly, by creating Defendants' System, a directly competing web and mobile application that incorporates Pet Check's Licensed Products and Methods, and offering Defendants' System for sale through DogZenergy, Inc. and Handlr, Inc., Defendant Ms. Alwerud materially breached the Agreement.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 25 of the Complaint.

**26.**  By incorporating Pet Check's Licensed Products and Methods into the Defendants' System, Defendants DogZenergy, Inc., Handlr, Inc., and its owner Ms. Alwerud misappropriated Pet Check's licensed trade secrets and infringe Pet Check's intellectual property.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 26 of the Complaint.

**Infringement of Pet Check's Patent**

1

2    **27.**    Pet Check is also the owner of all right, title, and interest in the '334

3    Patent, which covers inventions relating to Pet Check's System, such as its dog

4    walking application.

5    **ANSWER:**  Defendants admit that the United States Patent Office issued the

6    patent attached to the Complaint as Exhibit A to Doug Simon, who then assigned it

7    to Pet Check.  Defendants deny that the '334 Patent contains valid and enforceable

8    claims.

9    **28.**    Pet Check markets and sells a web and mobile application system that

10   is covered by the '334 Patent.

11   **ANSWER:** Defendants have insufficient knowledge about Pet Check's actual

12   application system to admit or deny the allegations of Paragraph 28 and therefore

13   deny them.  However, to the extent that Plaintiff is asserting that the purported '334

14   Patent itself contains valid and enforceable patent claims, Defendants deny the

15   allegations contained in Paragraph 28 in its entirety.

16   **29.**    Claim 1 of the '334 Patent reads as follows:

17   An appointment management system for a pet care visit including

18   a walk for a pet care customer's pet, comprising:

19   a pet caregiver portable electronic device including a portable

20   electronic device microprocessor, a portable electronic device

21   memory, and a geographic location sensing mechanism, wherein

22   the pet caregiver portable electronic device is configured to

23   receive data input and to determine its geographic location; and

24   a server including a server processor, a server memory, and

25   wherein the server is configured to receive data input, the server

26   operating a website storing user accounts for the pet care

27   customer and the pet caregiver, permitting the pet caregiver and

28   the pet care customer to schedule the per care visit on the website,

---

1    and automatically storing appointment information and making

2    the appointment information accessible for viewing on the pet

3    caregiver personal electronic device and an electronic device of

4    the pet care customer, the appointment information indicating at

5    least one of a distance, a duration, and a route of the walk for the

6    scheduled visit;

7    the server memory storing a code identifying the pet care

8    customer and linked to information stored in the server memory

9    identifying the customer's pet and a pet care appointment site at

10   which the pet is located, and providing the caregiver access to the

11   pet identifying information and the location of the pet care

12   appointment site, as the pet caregiver logs into a user account of

13   the pet caregiver on the website, and;

14   an image of the pet care customer code stored at the pet care

15   appointment site on a medium readable by the portable electronic

16   device, to enable the pet caregiver portable electronic device to

17   read the code at the pet care appointment site when placed in

18   proximity to the customer code medium; and

19   the server programmed with instructions for the server processor

20   to receive a transmission of the code initiated by the pet caregiver

21   at a beginning of the pet care visit from the pet caregiver portable

22   electronic device located at the pet care appointment site,

23   compare the received code to the code identifying the pet care

24   customer in the server, subject to at least one precondition coded

25   into the instructions, said at least one precondition including that

26   the received code equal the stored code, perform a storing and

27   displaying subroutine including instructions to:

28   store a pet care visit start time corresponding to a pet care visit

1   start signal transmission from the pet caregiver portable electronic
2   device, the start signal transmission initiated at the pet care visit
3   start time from the pet care appointment site, store a pet care visit
4   end time corresponding to a pet care visit end signal received
5   from the pet caregiver portable electronic device, the end signal
6   transmitted at the pet care visit end time from the pet care
7   appointment site, store data received from the pet caregiver
8   portable electronic device indicating time-sequenced geographic
9   locations of the portable electronic device at a plurality of times,
10  separated by regular intervals, between the pet care visit start time
11  and the pet care visit end time, and in response to the end signal
12  from the pet caregiver portable electronic device, transmit data to
13  the electronic device of the pet care customer to permit display on
14  a display of the pet care customer electronic device the pet care
15  visit start time, the pet care visit end time, and a visual map of a
16  walk path constructed from said time-sequenced geographic
17  locations of the pet caregiver portable electronic device at each of
18  said plurality of times, to permit the pet care customer to confirm
19  at a route of the walk, the pet caregiver portable electronic device
20  programmed with instructions for the pet caregiver portable
21  electronic device microprocessor to record the geographic
22  location of the pet caregiver portable electronic device at each of
23  said plurality of times separated by the regular intervals and to
24  transmit data representing said geographic location at each of said
25  plurality of times to the server, and the pet caregiver portable
26  electronic device further comprising a clock and being further
27  programmed with instructions to detect whether a transmission
28  signal is available to transmit the pet care visit start or end signal

1    during the pet care visit start or and time, respectively; and if the
2    transmission signal is unavailable, read and store the time from
3    the clock when the input is received; and transmit the pet care
4    visit start or end signal and the corresponding stored time from
5    the clock to the server when the transmission signal is available.

6

7    **ANSWER:**   To the extent that Paragraph 29 purports to recite the provisions
8    of Claim 1 of the document attached as Exhibit A to the Complaint, Defendants'
9    response is that the document speaks for itself.

10   **30.**   Upon information and belief, Defendants' System includes all of the
11   patented features of the '344 Patent.

12   **ANSWER:**   Defendants deny each and every averment contained in Paragraph
13   30 of the Complaint.

14   **31.**   Defendants' System includes an appointment management system.

15   **ANSWER:**   To the extent that this averment is alleging a unity of interests
16   between each named defendant by referring to the Handlr Tech as *"Defendants'*
17   *System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech
18   includes an appointment management system.  Defendants deny that Pet Check has
19   any proprietary rights to the appointment management system utilized by the Handlr
20   Tech.

21   **32.**   Defendants' system includes use of a portable electronic device, such as
22   a mobile phone that includes geographic location sensing and is capable of receiving
23   data to determine its geographic location.

24   **ANSWER:**   To the extent that this averment is alleging a unity of interests
25   between each named defendant by referring to the Handlr Tech as *"Defendants'*
26   *System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech
27   utilizes the global position satellite (*"GPS"*) system which is integrated into most
28   cellular *"smart-phones"*.  Defendants deny that Pet Check has any proprietary rights

to GPS technology.  Defendants further deny that Pet Check has any proprietary interest in the portion of the Handlr Tech which accesses the cell-phone's GPS system.  Defendants further deny that Pet Check has any proprietary interest in the appointment management system utilized by the Handlr Tech.

**33.**   Defendants' system permits scheduling, viewing, and storing appointments that include a distance, a duration, or a route for a scheduled visit.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech permits scheduling, viewing and storing appointments, which includes logging and storing distance, duration, and route information for scheduled services.  Defendants deny that Pet Check has any proprietary interest in the appointment management system utilized by the Handlr Tech for the logging and storage of such information.

**34.**   Defendants' system permits storing of customer information in association with the appointment site.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr, Tech permits the storing of customer information.  However, the term *"in association with the appointment site"* is vague and ambiguous as to its meaning in the context of the storage of customer information and on that basis, Defendants generally deny this allegation.  To the extent that the phrase *"storing of customer information in association with the appointment site"* refers to the use of a bar-code scanner, Defendants specifically deny this allegation.

**35.**   Defendants' System includes requesting and using an identification code that is stored, received, used to access the appointment site and used to identify customers and/or providers.

///

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr, Tech requires the use of a username and password in order for customers to log into the website or cellular app.  However, the phrase *"requesting and using an identification code that is stored, received, used to access the appointment site and used to identify customers and/or providers"* is vague and ambiguous as to its meaning in the context of the customer log-in requirements and on that basis, Defendants generally deny this allegation.  To the extent that the phrase refers to the use of a bar-code scanner at an appointment site, Defendants specifically deny this allegation.

**36.**   Defendants' System includes the capability to store, send and/or receive start time, end time and route information for appointments.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech includes the capability to store, send and/or receive start time, end time and route information for appointments.  Defendants deny that Pet Check has any proprietary rights or interest to the technology utilized by Handlr for this feature of the Handlr Tech.

**37.**   Defendants' System includes GPS tracking for all team members, and enables tracking customers and team members to receive check-in and check-out notifications.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech utilizes the GPS tracking system which is incorporated into most cellular "smart-phones".  Defendants deny that Pet Check has any proprietary rights to the technology utilized by the Handlr Tech for this purpose.  Defendants further deny that

Pet Check has any proprietary interest in the portion of the Handlr Tech which accesses the cell-phone's GPS system.  Defendants further assert that the term *"team members"* or *"team member"* is vague and ambiguous as to its meaning in the context of Paragraph 37 and on that basis deny that the Handlr Tech enables *"team members"* to receive check-in and check-out notifications.

**38.**   Defendants' System enables transmission of stored data either immediately, or at a later time if required.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech enables transmission of stored data either immediately, or at a later time if required.

**39.**   Accordingly, Defendants offer for sale and sell a web and mobile application covered by the claims of the '334 Patent without authorization, which causes harm to Pet Check.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 39 of the Complaint.

**40.**   Pet Check sent Defendants three separate letters notifying them of their breach of the Agreement and their infringement of the '334 Patent. The first letter was sent on August 22, 2016, and Pet Check received no response. The second letter was sent on October 14, 2016, and Pet Check received no response. The third letter was sent on January 5, 2017 with a process server. A true and correct copy of each of these letters is attached hereto as Exhibit D.

**ANSWER:**   These answering Defendants have insufficient information to admit or deny the allegation in Paragraph 40 of the Complaint that Pet Check sent three separate letters to Defendants, and on that basis denies it.  Defendants admit that it is aware of two letters sent to Defendant Brittany Alwerud.

///

///

**41.**    Pet Check received the first response from Ms. Alwerud's attorney on March 17, 2016. A true and correct copy of Defendants' first response to Pet Check's demand letters is attached hereto as Exhibit E.

**ANSWER:**   Defendants are aware of two letters sent to Defendant Brittany Alwerud.  Defendant is not aware of any letters sent to Handlr or DogZenergy. Defendants admit that Defendants attorney sent the letter attached as Exhibit E to the Complaint on or about the date indicated on the document.

**42.**    Since July of 2016, both parties have attempted to negotiate a settlement; however, both parties have been unable to agree to reasonable settlement terms.

**ANSWER:**   Defendants deny that settlement negotiations have been ongoing since July of 2016, but admit that the parties have attempted settlement in good faith.

**43.**    Meanwhile, Defendants have continued to sell Defendants' System.

**ANSWER:**    To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants further deny that the Handlr Tech is *"for sale"* within the commonly used meaning of that term.  Defendants admit that the Handlr Tech's services are currently available for use by the public.

**44.**    Defendants' conduct in selling and offering for sale a web and mobile application in violation of the '334 Patent is willful and with knowledge of the '334 Patent.

**ANSWER:**   Defendants admit that it is aware of the claims in the purported '334 Patent.  Defendants deny that the Handlr Tech utilizes or otherwise infringes upon any protected claim described in the '334 Patent.

## COUNT I

## BREACH OF CONTRACT

**45.**    Pet Check realleges and incorporates Paragraphs 1 - 44 of this Complaint.

///

---

ANSWER TO COMPLAINT AND COUNTERCLAIM                                              18

**ANSWER:**  Defendants reallege and incorporate their answers to Paragraphs 1 - 44 of the Complaint.

**46.**    Under Article 14(F)(ix), of the Agreement, on behalf of Defendant DogZenergy, Inc., Defendant Ms. Alwerud agreed not to *"use, or permit any other person, entity or Licensee Personnel to use, the Licensed Products or Methods"* in any unauthorized manner as described in sections 14(F)(i)-(xiv).

**ANSWER:**  Defendants admit that Ms. Alwerud executed the Agreement in her capacity as the *"owner"* of DogZenergy, Inc. and deny that she signed the Agreement in any other capacity.   With regard to Plaintiff's characterization of Article 14 of the Agreement, Defendants generally deny the characterization and defers to the document itself.

**47.**    Under Article 14(G) of the Agreement, defendant Ms. Alwerud also agreed not to "directly or indirectly, by itself or through third parties, develop, create, sell, finance or assist in the development, creation or sale of any digital, mobile or internet based product or service which is intended to compete with the Licensed Products and Methods."

**ANSWER:**  Defendants admit that Ms. Alwerud executed the Agreement in her capacity as the *"owner"* of DogZenergy, Inc. and denies that she signed the Agreement or agreed to its terms in any other capacity.  With regard to Plaintiff's characterization of Article 14 of the Agreement, Defendants specifically deny said characterization and defers to the qualifying language in the actual Agreement, which speaks for itself.

**48.**    Defendants' System is a web and mobile application that uses Pet Check's Licensed Products and Methods in an unauthorized manner and competes directly with the Pet Check System.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants admit that the Handlr Tech is

a web and mobile application.  Defendants deny that the Handlr Tech uses Pet Check's Licensed Products and Methods in an unauthorized manner or in any manner whatsoever.  Defendants admit that the Handlr Tech can be used by third parties to schedule, track and bill for a variety of home services, including dog-walking services.

49.   Accordingly, Defendants use and sale of Defendants' System constitutes breach of the Agreement.

**ANSWER:**   To the extent that this averment is alleging a unity of interests between each named defendant by referring to the Handlr Tech as *"Defendants' System"*, Defendants deny this allegation.  Defendants deny that Handlr or Ms. Alwerud entered into any Agreement(s) with Plaintiff.  Defendants further deny that the purported Agreement is a valid and enforceable contract.  Defendants further deny that any conduct on behalf of any named defendant, constituted a breach of the Agreement.

50.   Pet Check has been damaged and will continue to be damaged as a result.

**ANSWER:**   Defendants deny that it has breached any valid and enforceable obligation to Plaintiff.  Further, to the extent a jury or a court sitting without a jury, finds any of these answering Defendants to be in breach of the purported Agreement, Defendants deny that Pet Check has suffered any damages thereby.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS

51.   Pet Check realleges and incorporates Paragraphs 1 - 50 of this Complaint.

**ANSWER:**   Defendants reallege and incorporate their answers to Paragraphs 1 - 50 of the Complaint.

52.   Pet Check's Trade Secrets are related to software that is licensed and sold to consumers both inside and outside of California.  By virtue of continued use

of Pet Check's Trade Secrets, Defendants have placed Pet Check's Trade Secrets in interstate commerce.  Products embodying Pet Check's Trade Secrets within Pet Check's System and Defendants' System have been used in interstate commerce.

**ANSWER:**  Defendants have insufficient information to admit or deny the allegations in Paragraph 52 and on that basis denies them.  However, Defendants deny that any of them are in possession of, or have ever been in possession of, any confidential information belonging to Pet Check or any other information which could be characterized as Pet Check's trade secrets under the Uniform Trade Secrets Act.

**53.**    Defendants have used Pet Check's confidential and proprietary information to create their mobile and web application, which includes protected trade secrets as described by the Agreement.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 53 of the Complaint.

**54.**    Upon information and belief, Defendants are willfully and improperly using Pet Check's trade secrets and intends to disclose and use Pet Check's Trade Secrets for their own financial benefit. Defendants have provided no justification for this use and know or should know that Pet Check's trade secrets are Pet Check's property.

**ANSWER:**  Defendants deny each and every averment contained in Paragraph 54 of the Complaint.

**55.**    Pet Check has not expressly or impliedly consented to Defendants' use or disclosure of Pet Check's Trade Secrets in any way.

**ANSWER:** Admit.

**56.**    Defendants are aware that they are under a duty to not use Pet Check's trade secrets and have full liability for such use.

**ANSWER:**  Defendants deny that any of them are in possession of any of Pet Check's trade secrets, to the extent that any exist.  Defendants further deny that any

of them are in possession of, or have ever been in possession of, any confidential information belonging to Pet Check, or any other information which could be characterized as Pet Check's trade secrets under the Uniform Trade Secrets Act.

**57.** Defendants have misappropriated Pet Check's trade secrets that include, but are not limited to Software, object code, source code, Documentation, visual expressions, web site, screen formats, report formats and other design features of the Software, ideas, methods, algorithms, formulae and concepts, all derivative works and copies based upon or utilizing any of the foregoing.

**ANSWER:** Defendants deny each and every averment contained in Paragraph 57 of the Complaint.

**58.** Plaintiff has demanded that Defendants cease using Pet Check's trade secrets, but Defendants have failed to do so without any appropriate basis.

**ANSWER:** Defendants admit that Plaintiff has demanded that Defendants cease using Pet Check's trade secrets. However, Defendants deny any of them are using Pet Check's trade secrets in the first instance. Defendants deny that any of them are in possession of, or have ever been in possession of, any confidential information belonging to Pet Check or any other information which could be characterized as Pet Check's trade secrets under the Uniform Trade Secrets Act.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 9,165,334

**59.** Pet Check realleges and incorporates Paragraphs 1 - 58 of this Complaint.

**ANSWER:** Defendants reallege and incorporate their answers to Paragraphs 1 - 58 of the Complaint.

**60.** The United States Patent and Trademark Office duly and legally issued the '334 Patent on October 20, 2015. Pet Check is the owner of all right, title and interest in the '334 Patent, and has the right to enforce the rights against infringement and to recover damages for all infringements thereof.

**ANSWER:** Defendants admit that Pet Check is the assignee of record of the purported '334 Patent. Defendants deny that the purported '334 Patent includes valid and enforceable claims.

**61.** Defendants' mobile and web application directly infringes one or more claims of the '334 Patent, including, but not limited to, claim 1 of such patent.

**ANSWER:** Defendants deny each and every averment contained in Paragraph 61 of the Complaint.

**62.** Pet Check has been damaged by Defendants' infringing conduct.

**ANSWER:** Defendants deny each and every averment contained in Paragraph 62 of the Complaint.

**63.** Furthermore, on information and belief, Defendants' acts of infringement were willful and/or in willful disregard of the '334 Patent because Defendants had knowledge of the '334 Patent and continued their infringing activities.

**ANSWER:** Defendants admit that the '334 Patent is public record. Defendants deny each and every remaining averment contained in Paragraph 63 of the Complaint.

**64.** This is an exceptional case because of such willful infringement, and treble damages payable to Pet Check by Defendants is warranted.

**ANSWER:** Defendants deny each and every averment contained in Paragraph 64 of the Complaint.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

**65.** As a separate and independent affirmative defense, Defendants allege that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**66.** As a separate and independent affirmative defense, Defendants allege that Plaintiff's claims are barred by the applicable statutes of limitation to the extent those claims seek recovery for events that occurred prior to such limitations periods.

**THIRD AFFIRMATIVE DEFENSE**

**67.**   As a separate and independent affirmative defense, Defendants allege that their conduct in regard to Plaintiff was in good faith and without fraud, oppression or malice for Plaintiff and its rights, thereby precluding any and all claims for punitive or exemplary damages.

**FOURTH AFFIRMATIVE DEFENSE**

**68.**   As a separate and independent affirmative defense, Defendants allege that Plaintiff's claims are barred by the equitable doctrines of laches, waiver, estoppel and unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

**69.**   As a separate and independent affirmative defense, Defendants allege that the subject matter of United States Patent No. 9,165,334 is, in and of itself, invalid and unenforceable under 35 U.S.C. §102(a) in that is obvious, well used prior art.

**SIXTH AFFIRMATIVE DEFENSE**

**70.**   As a separate and independent affirmative defense, Defendants allege that the subject matter of United States Patent No. 9,165,334 is, in and of itself, invalid and unenforceable as a result of the on-sale bar provisions of 35 U.S.C. §102(b).

**SEVENTH AFFIRMATIVE DEFENSE**

**71.**   As a separate and independent affirmative defense, Defendants allege that Doug Simon, Pet Check's assignor, did not invent the subject matter of United States Patent No. 9,165,334, nor did he make any invention or discovery, either novel, original or otherwise, within the meaning of Title 35 of the United States Code.

**EIGHTH AFFIRMATIVE DEFENSE**

**72.**   As a separate and independent affirmative defense, Defendants allege that one or more of the claim limitations asserted in the purported United States Patent No. 9,165,334 does not exist in the Handlr Tech.

**NINTH AFFIRMATIVE DEFENSE**

**73.**   As a separate and independent affirmative defense, Defendants allege that  the purported Agreement between Plaintiff and DogZenergy is void and unenforceable in that it was procured by Plaintiff through fraud and deception.

**TENTH AFFIRMATIVE DEFENSE**

**74.**   As a separate and independent affirmative defense, Defendants allege on information and belief that the purported Pet Check System does not contain any *"Trade secrets"* within the meaning of the Uniform Trade Secrets Act in that the purported Pet Check System does not derive independent economic value from information which is not readily ascertainable by Defendants by proper means.

**ELEVENTH AFFIRMATIVE DEFENSE**

**75.**   As a separate and independent affirmative defense, Defendants allege that, they have not misappropriated any purported trade secrets or other proprietary rights owned by Plaintiff in conducting their business or otherwise.

**TWELFTH AFFIRMATIVE DEFENSE**

**76.**   As a separate and independent affirmative defense, Defendants allege that  the Handlr Tech neither infringes upon any purported proprietary rights owned by Plaintiff, nor is it derived from or implemented through the use of any of Plaintiff's purported trade secrets in that the Handlr Tech is derived exclusively from open-source technology.

## COUNTERCLAIMS OF DOGZENERGY, INC.

**77.**   Defendants and Counterclaimants, HANDLR, INC. (***"Handlr"***), DOGZENERGY, INC. (***"DogZenergy"***), and BRITTANY ALWERUD (***"Ms. Alwerud"***), who for the purposes of this counterclaim remain collectively referred to as ***"Defendants"***, hereby complain and allege against Plaintiff and Counterdefendant, Pet Check Technology, LLC., who for the purposes of this counterclaim, maintains its reference as ***"Plaintiff"*** or ***"Pet Check"***, as follows:

**78.**    This Court has jurisdiction over the first counterclaim based on 28 U.S.C. §§2201 and 2202, and under the laws of the United States concerning actions relating to patents.  This Court has supplemental jurisdiction over the subsequent counterclaims based on 28 U.S.C. §§ 1331, 1338 and 1367.

**79.**    There is a substantial and continuing justiciable controversy between Plaintiff on the one hand, and Defendants on the other hand as to Plaintiff's right to threaten or maintain suit for infringement of U.S. Patent No. 9,165,334.

## GENERAL ALLEGATIONS

**80.**    Counterclaimant DogZenergy is a corporation, duly formed and authorized to conduct business in the State of California.

**81.**    Counterclaimant Brittany Alwerud is an individual residing in the County of Los Angeles, State of California.  Ms. Alwerud is DogZenergy's chief executive officer and sole shareholder.

**82.**    DogZenergy operates an established dog-walking business in San Diego, California.  DogZenergy began as a sole proprietorship in approximately 2006.  By 2012, when the business incorporated, it had a staff of approximately six full or part time dog-walkers and a customer base of approximately 100 dog-owners.  Prior to 2012, DogZenergy utilized Google Calendar and PayPal software for its scheduling and billing needs.

**83.**    Counterdefendant Pet Check is an active Limited Liability Company, formed under the laws of the State of Illinois.  On information and belief, Pet Check is not authorized to conduct business in the State of California.  On information and belief, Doug Simon (***"Simon"***) is the sole owner/member of Pet Check.

**84.**    Pet Check is in the business of licensing an electronic, internet-based scheduling platform for dog walking businesses (referred to herein as ***"Pet Check's System"***).  Simon applied for a patent on the Pet Check System in approximately 2011.

///

85.     On information and belief, U.S. Patent No. 9,165,334 (*"'334 Patent"*) was issued to Simon in October of 2015.  On information and belief, Simon subsequently assigned the '334 Patent to Pet Check on or about December of 2017.

86.     As described in the Abstract of the '334 Patent (*Exhibit A to the Complaint*), Pet Check's System consists of:

> "A pet or human care management system and method are provided.  In one embodiment, the system includes a portable electronic device carried by a care service provider to scan a care customer bar code at the location of a care visit to indicate the start and/or end of the care visit.  The portable electronic device also includes a GPS component and transmits its location at a plurality of times during the care visit, such as to indicate the path of a scheduled walk. A website is employed to administrate the care management system, including scheduling walks, licensing care providers, and creating customer and care provider accounts."

87.     Defendants are informed and believe that the '334 Patent, as described in the Abstract and in the actual claims themselves, can be reasonably translated into layman's terms as follows:  (1) The *"portable electronic device"* is a commercially available cellular 'smart-phone', such as an iPhone, which has a built-in GPS system.  (2) The *"care service provider"* is a dog-walker. (3) The *"location of the care visit"* is the dog owner's home.

88.     Defendants further allege on information and belief that the purported '334 Patent basically describes a cell phone application which utilizes a bar-code scanner as an on/off switch.  The dog walker scans a bar-code at the beginning and end of a dog walk.  The scanned bar-code identifies a customer account and trips an on/off switch at the Pet Check web-site.  The cell-phone's GPS signal then tracks the dog-walk and logs the walk onto the dog-walker's Pet-Check account at the web-site.

**89.**     On information and belief, all of Pet Check's purportedly proprietary systems are commonly used software applications.  Simply by way of example, the GPS interface works the same way as a Google Maps cellular app.  The *"patented"* QR Code is basically commercially available bar-code scanner software similar to the scanning systems used by retail stores to track merchandise and inventory.  The bar-code scanner simply identifies a customer account and triggers an on/off switch for tracking a dog's walk.  The tracker syncronizes with a calendaring system which, on information and belief, operates the same way as most other internet-based calendaring systems.

**90.**     Defendants further allege on information and belief that between 2011 and 2015, the patent claims in Pet Check's System were repeatedly rejected by the United States Patent and Trademark Office as being, *inter alia*, obvious to anyone skilled in the art under 35 U.S.C. §103.

**91.**     On information and belief, Simon was ultimately able to distinguish Pet Check's System from prior art and to convince the patent examiner that the purported invention was nonobvious based solely upon the use of the bar-code scanning system as a check-in/check-out method.

**92.**     DogZenergy began using the Pet Check technology to help keep track of its scheduling and billing needs for its dog-walkers and customers.  However, the Pet Check scheduling system was inadequate because: (1) the display of the schedules was difficult to use efficiently; (2) it did not have the option for group appointments; (3) it did not have the capacity to automate scheduling based upon staff availability; (4) it did not have the ability to allow customers to book on demand; (5) it did not, at the time, offer a customer-accessible mobile-application; (6) it did not have an in-app chat system for mobile staff; it did not have staff/customer/business owner three-way communication capability, with all phone numbers masked; and, (7) it did not have a rating system to keep track of staff performance and customer satisfaction.  Further, the Pet Check billing system was prone to billing errors.  Each of the

foregoing deficiencies in the Pet Check system were impeding DogZenergy's ability to scale its business and to keep current with modern changes and demands in the mobile services industry.

93.     Additional problems with Pet Check's System was the bar-scanning system, or *"QR Code"*.  The QR Code was basically a physical card containing a bar-code which the end-user client (*dog owner*) kept in their home for the dog-walker to scan with their smart-phone when he or she checked-in and checked-out of the home for dog-walks.  The problem with the system was that the homeowners tended to lose the bar code card, or the bar code itself would fade and become unreadable, or the dog walker would simply forget to scan the code at the beginning and/or end of each walk.

94.     Between 2012 and 2014, DogZenergy's use of the Pet Check QR Code system and calendaring/billing software became more and more problematic.  In July of 2014, Handlr, Inc. was incorporated.  Counterclaimant Handlr, Inc. is Delaware corporation with its executive offices in Los Angeles, California.  Handlr is duly authorized and registered to conduct business in the State of California.

95.     After its formation in July of 2014, Handlr hired software developers to create an internet-based system to provide a business management solution platform for small business owners (***"Handlr Tech"***).  The Handlr Tech is designed as a small business management system for a broad range of service industries.  It is not simply a dog-walking application and it does not utilize the QR Code system, which is at the heart of the purported '334 Patent.

96.     The Handlr Tech is designed to allow end-user customers to see a vendor's availability and to schedule services, on demand, through the use of an open-source, automatically populating calendaring system.  Simply by way of example, the functionality of the system is not significantly different from the *'court reservation system'* which is currently utilized by the Los Angeles Superior court for reserving and scheduling law and motion hearings.

**97.** The Handlr Tech's tracking system is synchronized with the auto-populating calendar system. It is turned on manually in the cell-phone application when the user arrives at the appointment and turned off manually in the cell-phone application when the task is completed. The system automatically logs into the proper account based upon the calendar schedule (*not through the use of a bar code*). In the case of a task such as a dog-walk, the program tracks and logs speed and movement through GPS technology, similar to popular athletic apps, such as *"FitBit"* or *"Strava."* Handlr's billing program, interfaces with the rest of the system in a manner which is similar to the one used by the popular passenger services, *"Uber"* and *"Lyft."*

**98.** In addition, the Handlr Tech includes a social media aspect, which allows customers to see which of their friends and acquaintances use prospective service providers, similar for example, to a web-based application such as *"Foursquare"*. The Handlr Tech also allows customers to rate the services they have received and it allows other prospective customers to see a service provider's ratings, similar to most other web-based provider of services on the internet.

**99.** Handlr Tech users include dog-walking services, home improvement services, baby-sitting services, pet-sitting services, private yoga lessons, private music lessons, private fitness training, etc. The Handlr Tech does not use a QR Code, or any other bar-code scanning system.

**100.** In approximately December of 2015, DogZenergy terminated the Agreement with Pet Check and began using the Handlr Tech to track and bill its dog walking services. Upon DogZenergy's termination of the Agreement, it did not retain or continue to utilize any part of Pet Check's System. In February of 2018, Pet Check initiated this action against DogZenergy, Handlr and Brittany Alwerude alleging infringement of the '334 Patent, breach of contract and misappropriation of trade secrets.

*///*

## FIRST COUNTERCLAIM

## DECLARATORY RELIEF FOR NON-INFRINGEMENT

## AND INVALIDITY OF U.S. PATENT NO 9,165,334.

**101.** Defendants incorporate herein by reference paragraphs 77 through 100, inclusive, as if fully set forth at length.

**102.** This cause of action seeks a declaratory judgment to settle an actual controversy between the parties hereto with respect to the validity, infringement and unenforceability of United States Letters Patent No. 9,165,334.

**103.** United States Letters Patent No. 9,165,334 is invalid, void and unenforceable for one or more of the following reasons:

i.     The alleged inventor did not himself invent the subject matter sought to be patented, nor did he make any invention or discovery, either novel, original or otherwise, within the meaning of United States Code, Title 35;

ii.     The claimed invention as a whole was obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains;

iii.     Before the applicant made the alleged invention claiming such patent, the alleged invention was made in this country and was not abandoned, suppressed or concealed;

iv.     The claims of such patent did not particularly point out and distinctly claim the subject matter which the patentee regarded as his invention;

v.     The alleged inventor failed to disclose in the application of the alleged invention that the alleged invention claimed in such patent application was known or used prior the purported inventor's, application submittal;

vi.     If there be any invention in the subject matter of the patent in suit, which is denied, the patent nevertheless was not obtained in a manner consistent with the provisions of Title 35, United States Code; and

///

---

vii.    One or more of the patent claims asserted in United States Patent No. 9,165,334 are invalid and unenforceable as a result of the on-sale bar of 35 U.S.C. §102(b).

**104.**    In view of the state of the prior art and the language of the claims of such United States Letters Patent No. 9,165,334 and by reason of the proceedings had or taken in the United States Patent and Trademark Office during and after the prosecution of the application for such patent, Plaintiff is estopped from claiming that the claims of such patent, or any of them, have such scope as to cover and embrace any product with which Defendants have made, used or sold.

**105.**    United States Letters Patent No. 9,165,334 has not been and is not being infringed by Defendants because they have not made, used or sold any item or committed any act which comes within the scope of any claim thereof.

**106.**    United States Letters Patent No. 9,165,334 is invalid, void and unenforceable against Defendants since Plaintiff is guilty of laches and estoppel.

**107.**    United States Letters Patent No. 9,165,334 is invalid, void and unenforceable against Defendants by reason of unclean hands and inequitable conduct on the part of Plaintiff in the acquisition, maintenance, licensing and assertion of such patent.

**108.**    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Defendants contend that United States Patent No. 9,165,334 is invalid, void and unenforceable when properly construed and Plaintiff has no right to claim the exclusive right to use and license publically available open-source technology, including but not limited to: (1) applications which utilize the GPS tracking systems which are integrated into most modern cell-phones; (2) commonly used and commercially available electronic calendaring technology; and (3) commonly used and commercially available billing systems. Plaintiff disputes these contentions and instead contends that United States Patent No. 9,165,334 is a valid and enforceable United States Patent.

**109.** Defendants desire a judicial declaration of their rights and duties, and a declaration that United States Patent No. 9,165,334 is invalid and void and that Plaintiff has no right to the exclusive use of such commonly available cell-phone applications for GPS tracking, calendaring, and billing, or to otherwise appropriate to themselves the exclusive use of such method of business management applications in the dog-walking industry, or otherwise.

WHEREFORE:

1. ***On the Complaint***, Defendant prays:

    a. That Plaintiff take nothing by way of its Complaint;

    b. That the Court award attorney's fees and costs in favor of Defendants and against Plaintiff on the First Cause of Action for Breach of Contract pursuant to contract;

    c. That this Court find Plaintiff brought its Second Cause of Action for Misappropriation of Trade Secrets in bad faith and that Defendants be awarded their costs, disbursements, and attorney fees for the defense of this action, pursuant Illinois Compiled Statutes 765 ILCS 1065/5 and California Civil Code §3426.4;

    d. That the Court find this to be an exceptional case and that Defendants be awarded their costs, disbursements, and attorney fees for the defense of this action, pursuant to 35 U.S.C. § 285; and

    e. For such other and further relief as the Court may deem just and proper.

2. ***On the Counterclaim*** for Declaratory Relief for Non-infringement and Invalidity of U.S. Patent No. 9,165,334, Defendants pray for judgment against Plaintiff as follows:

    a. Claim 1 of United States Letters Patent No. 9,165,334 and each and every other claim thereof be adjudged to be invalid, and void and that Defendants be adjudged not to infringe such patent; and that the patent

issued to Simon and assigned to Pet Check be declared unenforceable because of laches, estoppel, misuse, unclean hands, and inequitable and fraudulent conduct as well as barred by the provisions of 35 U.S.C. §§102 and 103 and other limiting statutes according to proof at trial;

b.   That the Court find this to be an exceptional case and that Defendants be awarded their costs, disbursements, and attorney fees for the defense of this action, pursuant to 35 U.S.C. §285;

c.   That Plaintiff be permanently enjoined from prosecuting or bringing or threatening to bring any action against any users of the Handlr Tech for alleged infringement of Pet Check's claimed patent(s);

d.   That Plaintiff, and its agents, employees and attorneys be permanently enjoined from charging or asserting that the use of the Handlr Tech by third parties is in violation of or infringes Plaintiff's alleged patent rights under U.S. Patent No. 9,165,334; and

e.   For such other and further relief as the Court may deem just and proper.

Date: May 1, 2018

*Joseph Brown*

Joseph R. Brown, attorney for Defendants and Counterclaimants, DogZenergy, Inc., Handlr, Inc., and Brittany Alwerud.

(PROOF OF SERVICE BY MAIL - 1013, 2015.5 C.C.P.)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am resident of the county aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 13808 Ventura Blvd., Sherman Oaks, California 91423.

On May 1, 2018, I caused the ANSWER TO COMPLAINT; AND COUNTERCLAIM AGAINST PET CHECK TECHNOLOGY, LLC FOR DECLARATORY RELIEF FOR NON-INFRINGEMENT; AND INVALIDITY OF U.S. PATENT NO. 9,165,334 to be served on the parties in said action, by CM/ECF electronic service and by enclosing a true copy in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as indicated below:

KARIN G. PAGNANELLI - Attorney for Plaintiff
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
kgp@msk.com

GREGORY J. LEIGHTON - Attorney for Plaintiff
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
gleighton@nge.com

TANVI B. PATEL - Attorney for Plaintiff
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
tpatel@nge.com

I certify (or declare), under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.  Executed on May 1, 2018 at Los Angeles, California.

*Joseph Brown*
Joseph R. Brown